IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JAMES TWOMEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge John Z. Lee |
| | ) | |
| OCWEN LOAN SERVICING, LLC, | ) | 16-cv-0918 |
| EQUIFAX INFORMATION SERVICES, | ) | |
| LLC, and EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Twomey claims that Defendant Ocwen Loan Servicing LLC's collection efforts violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, the Bankruptcy Code, 11 U.S.C. §§ 524, 105, the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), 815 Ill. Comp. Stat. 505/2 *et seq.*, and the Fair Credit Reporting Act ("FCRA"), 15 U.S.C § 1681 *et seq.* Plaintiff also claims that Defendant Experian Information Solutions, Inc., violated the FCRA by improperly reporting his credit history. Defendants Ocwen and Experian have moved to dismiss Counts III and VI, respectively, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, the Court grants Ocwen's motion and denies Experian's motion.

**Factual Background**

In 2005, Twomey secured a mortgage for his residential property from GMAC Mortgage, LLC. Compl. ¶ 13. On August 1, 2012, Twomey refinanced with Ocwen and granted Ocwen a mortgage on the property. *Id.* ¶ 14. The subject loan was for $183,326.00. *Id*. In December 2013, Twomey defaulted on the subject loan. *Id.* ¶ 15.

On February 28, 2014, Plaintiff filed a Chapter 13 bankruptcy petition. *Id.* ¶ 16; *see* Compl., Ex. A. On May 2, 2014, the Honorable Bruce W. Black confirmed Twomey's Original Chapter 13 Plan, proposing that Twomey surrender the property to Ocwen in full satisfaction of its claims. *Id.* ¶¶ 19, 22. After the Plaintiff performed his duties under the Original Plan, the Bankruptcy Court entered an Order of Discharge, which included the subject loan. *Id.* ¶¶ 23-24; *see* Compl., Ex. F. The Order of Discharge stated:

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor . . . .

*Id.* ¶ 25. Defendants were served with the Order of Discharge on November 14, 2014. *Id.* ¶ 26. Twomey's bankruptcy case closed on December 18, 2014. *Id.* ¶ 28.

According to the complaint, after the discharge, from January 2015 through September 2015, Ocwen sent Twomey "no less than 15 separate dunning correspondences" and called Twomey's cell phone "no less than 90" times. *See id.* ¶¶ 31, 42. During this period, Ocwen filed foreclosure proceedings against the subject property. *Id.* ¶ 38. Plaintiff alleges that "Ocwen's collection calls were made with actual knowledge of [Twomey's] bankruptcy filing and discharge." *Id.* ¶ 44.

As for Experian, Plaintiff obtained his credit report from the company after the conclusion of his bankruptcy case. *Id.* ¶ 49. The Experian credit report contained two entries for "Ocwen Loan Servicing." *Id.*, Ex. I. The first entry identified the debt as Account # 68789XXXX. Under "Account Type," the entry noted that it was for "Mortgage Companies." And the entry stated a "Balance" of $182,542.00, and a "Past Due" amount of $18,953.00. Finally, under "Payment Status," the entry had the following notation: "Debt included in or discharged through Bankruptcy Chapter 13." *Id.*

The very next entry in the exhibit also is for an account numbered "68789XXXX" for "Ocwen Loan Servicing." This entry, however, noted a balance of $0, and a past due amount of $0. The

2

second entry also contained the notation, "Debt included in or discharged through Bankruptcy Chapter 13." *Id*.

On September 30, 2015, the Plaintiff sent a credit dispute letter to Experian with respect to the first entry, requesting that his credit file be updated to report a zero balance and the discharged status of the subject loan. *Id.* ¶ 50. The dispute letter was sent via certified mail to Experian and included the Plaintiff's bankruptcy schedules, Confirmed Plan, and Discharge Order. *Id.* The complaint alleges that Experian failed to respond to the Plaintiff's dispute letter. *See id.* ¶ 54.

## Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Furthermore, the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the complaint does not have to include "detailed factual allegations," it must "include sufficient facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011). In deciding a Rule 12(b)(6) motion to dismiss, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903. "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

## Analysis

**I.  Ocwen's Motion to Dismiss Count III**

Defendant Ocwen has moved to dismiss Count III in which Plaintiff claims that Ocwen's post-discharge collection efforts violate the ICFA. Specifically, Ocwen argues that the Bankruptcy Code preempts Plaintiff's claim under the ICFA.

Time and time again, courts in this district have held that the Bankruptcy Code preempts the field when it comes to remedying violations of injunctive orders issued by bankruptcy courts.

3

In *Cox v. Zale Delaware, Inc.*, the court emphasized the "expansive reach of the Code" and held that the code preempted state law claims based on unfair and deceptive business practices for violating the automatic stay. No. 99 C 1670, 1998 WL 397841, at *5 (N.D. Ill. Nov. 24, 1999), *aff'd,* 239 F.3d 910 (7th Cir. 2001). In *Holloway v. Household Automotive Financial Co.*, the court held that the Bankruptcy Code preempted ICFA claims and iterated that "the Bankruptcy Code contemplates and provides for a comprehensive scheme by which to guard against fraud and remedy it." 227 B.R. 501, 508 (N.D. Ill. 1998).

Courts in other districts have also recognized the preemptive force of the Bankruptcy Code. In *Diamente v. Solomon & Solomon, P.C.*, the court noted that "because the Bankruptcy Code provides a remedial scheme for addressing violations of the Bankruptcy Code it preempts state law claims based upon such violations." No. 99 C 1339, 2001 WL 1217226, at *3 (N.D.N.Y. Sept. 18, 2001). The *Diamente* court reasoned that allowing a plaintiff to circumvent the Code's enforcement and remedial scheme would frustrate Congress's intent "to create a singular federal system to adjust all of the rights and duties of both creditors and debtors." *Id.* at *3; *see MSR Exploration Ltd. v. Meridian Oil, Inc.*, 74 F.3d 910, 914 (9th Cir. 1996) (Congress intended the Bankruptcy Code to "create a whole system under federal control which is designed to bring together and adjust all of the rights and duties of creditors and embarrassed debtors alike."); *see also Bessette v. Avco Fin. Servs., Inc.*, 230 F.3d 439, 447 (1st Cir. 2000) ("[T]he broad enforcement power under the Bankruptcy Code preempts virtually all alternative mechanisms for remedying violations of the Code."); *In re Shape, Inc.*, 135 B.R. 707, 708 (Bankr. D. Me. 1992) ("Since [the Bankruptcy Code] is applicable here, and has its own enforcement scheme and separate adjudicative framework, it must supercede any state law remedies."). The Court finds the reasoning of these courts persuasive.

Twomey argues that in a previous case involving Ocwen, *Wagner v. Ocwen Federal Bank*, No. 99-cv-5404, 2000 WL 1382222 (N.D. Ill. Aug. 28, 2000), the court rejected the Ocwen's preemption argument. *See* Pl.'s Resp. at 5. There is a critical factual distinction between the two cases,

however. In *Wagner*, the court held that the Bankruptcy Code did not preempt the plaintiff's FDCPA and state law claims because Ocwen was not assigned the note and mortgage until *after* the discharge. 2000 WL 1382222, at *1–3 (concluding that the plaintiff "has not attempted to bypass any remedies provided to her under the Code while her bankruptcy petition was pending" because she "had no real way of bringing Ocwen into the bankruptcy case when it was pending"). That is not the case here. Furthermore, the *Wagner* decision explicitly drew a distinction between the unique circumstances in that case and instances in which "there would be no cause of action absent the [Bankruptcy] Code." *Id.* at *3 (citing *Cox*, 242 B.R. at 450).

Plaintiff also contends that a more recent Seventh Circuit case, *Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004), informs whether the Bankruptcy Code preempts ICFA claims. At issue in *Randolph*, however, was whether two federal statutes, the Bankruptcy Code and the FDCPA, complemented or conflicted with one another. The *Randolph* court therefore had no occasion to discuss a federal statute's preemption of state law. In fact, the court distinguished the facts before it from those involved in preemption cases. *See id.* ("Preemption is more readily inferred, so decisions such as *Cox v. Zale*—which held that bankruptcy principles comes from federal rather than state law—are not informative about which federal laws apply to what transactions.").

For these reasons, the Court holds that the Bankruptcy Code preempts Plaintiff's claims under the ICFA, and Count III is dismissed with prejudice for failure to state a claim upon which relief may be granted.[1]

---

[1] Because attempts to collect a discharged debt constitute "contempt of the bankruptcy court that issued the order of discharge," Plaintiff may seek to enforce the order of discharge in bankruptcy court. *See Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 915, 917 (7th Cir. 2001) ("A court retains jurisdiction to enforce its injunctions.").

**II.     Experian's Motion to Dismiss Count VI**

In Count VI, Plaintiff claims that Experian violated the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b), by "failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished regarding" the Plaintiff. Compl. ¶ 145. Plaintiff also claims that Experian violated 15 U.S.C. § 1681i(a) because it failed to respond to his dispute letter. *Id.* ¶¶ 147–51. For its part, Experian contends that Count VI should be dismissed because the information provided in the credit report was not inaccurate.

In order to claim violations of 15 U.S.C. § 1681e(b) or § 1681i(a), a plaintiff must show, among other things, that the credit report contained inaccurate information. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("In order to state a claim under 15 U.S.C. § 1681e(b), a consumer must sufficiently allege that a credit reporting agency prepared a report containing inaccurate information."); *see also Wantz v. Experian Info. Sols.*, 386 F.3d 829, 834 (7th Cir. 2004) (a plaintiff cannot prevail under § 1681i absent "evidence that [the defendant] disclosed incorrect information"), *abrogated on other grounds*, *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007).

Although the first entry for "Ocwen Loan Servicing" in the Experian report does recognize that the mortgage debt was "included in or discharged through Bankruptcy Chapter 13," the entry also claims that there is a "balance" of $182,542.00 and a "past due" amount of $18,953.00. *See* Compl., Ex. I. It also noted a monthly payment obligation of $1,262.00. *Id.* This is in stark contrast to the very next entry on the credit report that also reports a mortgage debt owed to Ocwen discharged through bankruptcy; that entry, however, reports $0.00 on the balance, past due, and monthly payment lines. *See* Compl., Ex. I at 4.

Drawing all reasonable inferences in Plaintiff's favor (which the Court must do at this stage), the Court agrees that Plaintiff has stated a claim under FCRA. Seen in the light most favorable to Plaintiffs, the first Ocwen loan entry can be said to be inaccurate. Credit Reporting Agencies are "not prohibited from reporting a debt that was discharged in bankruptcy so long as

the balance amount is corrected to zero." *Freedom v. Citifinancial LLC*, No. 15 C 10135, 2016 WL 4060510, *6 (N.D. Ill. July 25, 2016); *see also* FED. TRADE COMM'N, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT 68 (July 2011), *available at* https://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations ("A consumer report may include an account that was discharged in bankruptcy (as well as the bankruptcy itself), as long as it reports a zero balance to reflect the fact that the consumer is no longer liable for the discharged debt."). Here, Experian included not only a non-zero balance amount, but also a past due amount and a monthly payment figure.

Nevertheless, Experian contends that this information was not inaccurate because Plaintiff still owed an obligation to Ocwen *in rem*. But courts have held that debts held *in rem* should not be included in an individual's personal credit report because "a person's credit report by definition provides information about the debts owed by *that person*." *Horsch v. Wells Fargo Home Mortgage*, 94 F. Supp.3d 665, 675 (E. D. Pa. 2015) (emphasis added). *See also* Groff v. Wells Fargo Home Mortgage, 108 F. Supp.3d 537, 541 (E.D. Mich. 2015). Experian provides no authority to the contrary.

Additionally, even assuming, for the purposes of argument, that the information contained in the credit report entry were factually accurate, numerous court have held that even technically accurate information could give rise to a FCRA claim, if the information is provided in such a way that it could mislead readers to make adverse credit determinations. *See, e.g., Sepulvado v. CSC Credit Serv., Inc.*, 158 F.3d 890, 895 (5th Cir. 1998) ("A credit entry may be 'inaccurate' within the meaning of the statute either because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (citing *Sepulvado*, 158 F.3d at 895); *Koropoulos v. Credit Burea, Inc.*, 734 F.2d 37, 40 n.4 (D.C. Cir. 1984) (stating that the purpose of the

FCRA is to protect consumers, which makes "it clear that Congress meant the Act to address more than technically inaccurate reports.").

For its part, the Seventh Circuit has "left open the question whether the statutory term 'inaccurate' [in FCRA] reaches" information that "though literally correct was misleading," *Crabill v. Trans Union, LLC*, 259 F.3d 662, 663–64 (7th Cir. 2001) (citing *Henson v. CSC Credit Serv.*, 29 F.3d 280, 285 n.4 (7th Cir. 1994)), leaving the district courts to make their own determinations (at least for now). Recently, Judge John J. Tharp provided an extensive discussion of this issue in *Taylor v. Screening Reports, Inc.*, No. 13 C 02886, 2015 WL 4052824, at *4 (N.D. Ill. July 2, 2015). After examining the decisions by other circuit courts as well as numerous district court cases, Judge Tharp concluded that "in light of the text of § 1681e(b) and the FCRA's concern for fairness to consumers, a defendant can be liable under § 1681e(b) for a technically accurate but materially misleading report." The Court finds Judge Tharp's reasoning persuasive.

Here, even if we were to assume that the information in the credit report indicating the balance and past due amount of $182,542.00 were technically accurate, a reader of the report could be misled into thinking that Plaintiff still personally owed this obligation (or, at a minimum, be confused as to this point), particularly in light of the very next entry that indicates a zero balance for a mortgage loan that was discharged in the same bankruptcy proceeding. Accordingly, drawing all reasonable inferences in Plaintiff's favor, Defendant Experian's motion to dismiss for Count VI is denied.

## **Conclusion**

For the reasons stated herein, Defendant Ocwen's motion to dismiss Count III is granted. Defendant Experian's motion to dismiss Count VI is denied.


**IT IS SO ORDERED.**              **ENTERED  8/22/16**

_____

**John Z. Lee**
**United States District Judge**